1998 OK CIV APP 157
**SPECIAL INDEMNITY FUND, Petitioner,**

v.

**Leroy D. MAPLES and the Workers' Compensation Court, Respondents.**

No. 90,172.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 26, 1998.

Rehearing Denied Aug. 14, 1998.

Certiorari Denied Oct. 21, 1998.

Georgiana Peterson, Henry A. Meyer, III, Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, Oklahoma, for Petitioner.

Scott A. Hendren, Tulsa, Oklahoma, for Respondents.

JOPLIN, Judge:

¶1 .Petitioner Special Indemnity Fund (Fund) seeks review of the trial court's orders refusing to vacate or modify a previous order and certifying a judgment against Fund under 85 O.S. Supp.1994 § 42 for accrued but unpaid benefits due Respondent Leroy D. Maples (Claimant). In this proceeding, Fund asserts the trial court erred (1) in failing to vacate or correct the facially void order under which Claimant asserted sums due and unpaid, that order directing payment by Fund in violation of 85 O.S. Supp.1994 § 172(E), and (2) in certifying a judgment against Fund in violation of § 42(A), that section argued to proscribe certification of judgments against Fund under any circumstance. We find no error as alleged however, and hold the order of the

Workers' Compensation Court should be sustained.

¶2 In August 1995, Claimant commenced an action against his employer to recover benefits for compensable on-the-job back injury occurring in December 1994. In August 1996, Claimant and his employer settled the claim by joint petition granting Claimant $38,500.00 in benefits for thirty-six percent (36%) permanent partial disability (PPD) to the body as a whole.

¶3 In September 1996, Claimant commenced the instant action against Fund, asserting his status as a "previously impaired person" at the time of the latest injury and a material increase in disability as a result of combination of previously adjudicated disabilities and disability attributable to the latest injury. 85 O.S. Supp.1994 §§ 171, 172. In January 1997, the trial court found Claimant a previously impaired person suffering from fifty-six and one-quarter percent (56.25%) PPD to the body as a whole at the time of the last injury, and, as a result of combination of the previously adjudicated disabilities with the 36% whole-man disability attributable to the last injury, now permanently and totally disabled (PTD). The trial court consequently held Claimant "due compensation at the rate of $205.00 per week from the date of his order and continuing for five (5) years or until the claimant ... reaches the age of 65 years, which ever shall come later," and "beginning with the date of filing of this order, [Fund] is ordered to pay compensation to claimant at the rate" previously determined.[1]

¶4 In June 1997, and apparently having received no payments from Fund, Claimant filed a Form 13 "Request for Prehearing Conference" seeking to compel Fund's payment of benefits in compliance with the trial court's January order. At hearing in September 1997, Claimant asserted entitlement to payments from Fund under the January

order from and after the date thereof and Fund's failure to pay, seeking certification of unpaid sums due thereunder as a judgment under 85 O.S. § 42(A). Fund objected, asserting its obligation to pay did not accrue until expiration of Claimant's benefits from Claimant's last injury under 85 O.S. § 172(E), according to Fund 260–some weeks after entry of the joint petition settling the last injury claim, and thus requested that the immediate-commencement-of-payment provision of the trial court's January order be vacated or modified. Further, said Fund, the express language of § 42(A) proscribed certification of judgments against Fund.

¶5 On consideration of the parties' briefs and arguments, the trial court rejected Fund's arguments, in its order holding Fund had waived any objections under § 172(E) to the immediate commencement of payment as previously ordered in January by failure to appeal from that order. By separate order, and pursuant to § 42(A), the trial court consequently certified a judgment for $6,355.00 due and owing Claimant under the January order. Fund appeals as aforesaid.[2]

■ ¶6 In its first proposition, Fund again argues that § 172(E) relieves it from the obligation to pay benefits until exhaustion of all weekly benefits for PPD attributable to Claimant's last injury. Section 172(E) provides:

All weekly payments for permanent partial disability shall be paid before any claim for benefits against the Special Indemnity Fund may be paid. In the case of a lump-sum permanent partial disability award or settlement, such award or settlement shall be divided by seventy percent (70%) of the employee's weekly wage up to a maximum of fifty percent (50%) of the state's average weekly wage, to determine the number of weeks which must elapse before a claim against the Special Indemnity Fund may be paid.

---

1. The trial court subsequently entered a "supplemental order" in February 1997 arguably affecting a change in weekly rate, but neither party raises any issue with regard thereto in this action.

2. Neither Claimant nor Fund raises any issue regarding application of the 1994 amendments to

§ 42 and § 172, the law in effect at the time of Claimant's last injury, that law controlling Fund's liability. *Special Indem. Fund v. Archer*, 1993 OK 14, ¶9, 847 P.2d 791, 794–795. *Accord, Batt v. Special Indem. Fund*, 1993 OK 163, 865 P.2d 1244; *Special Indem. Fund v. Choate*, 1993 OK 15, 847 P.2d 796.

Thus, says Fund, and notwithstanding Fund's failure to timely appeal the trial court's order directing immediate commencement of payment, the trial court lacked jurisdiction · to enter an order contrary to the express terms of § 172(E), rendering the January order facially void, unenforceable and subject to vacation at any time.

■ ¶ 7 "The Workers' Compensation Court has exclusive jurisdiction over its orders and awards *only* during the 20–day period prescribed by law for lodging a proceeding for review in the Supreme Court [when] [u]pon notice and adversary hearing, this trial tribunal may, within a period of twenty days from the day the decision was sent to the parties, (footnote omitted) vacate its order or award, either sua sponte or upon application of the party affected." *Snyder v. Smith Welding & Fabrication,* 1986 OK 35, ¶ 4, 746 P.2d 168, 169. (Emphasis added.) Stated otherwise,"[a]n order of the Workers' Compensation Court is final and conclusive unless the decision is appealed to the appeal panel, review is sought in the Supreme Court, or the Workers' Compensation Court vacates the order within twenty days after the date a copy is sent to the parties. (Citations omitted.)" *Special Indem. Fund v. Weber,* 1995 OK 43, ¶ 17, 895 P.2d 292, 298, fn. 20. As the Supreme Court previously noted:

> An award made by the Workers' Compensation Court becomes "final and conclusive upon all questions" unless (a) within 20 days after a copy of the award has been sent to the parties, review is sought in the Supreme Court, or (b) appeal is made to a three-judge review panel of the Workers' Compensation Court within 10 days after a copy of the award is sent or (c) within the same 20–day statutory period during which review of the original award could have been sought, an order vacating the award is made upon due notice to the parties and after an adversary hearing. (Footnote omitted.)

The order now before us was issued over five months after copies of the award it vacated had been sent to the parties. Without doubt, the trial judge lacked power to extinguish the parties' rights in that adjudicated liability. The vacation order under review is hence ineffective. A final award by the Workers' Compensation Court can be vacated only (a) in a proceeding instituted in this court within the prescribed time interval or (b) in a district court action for relief from the award on grounds of its procurement by extrinsic fraud.

. . .

> The Workers' Compensation Court's power to correct judgments and final orders nunc pro tunc extends only to clerical errors or miscalculations appearing on the face of the decision, not to erroneous judicial findings. Orders nunc pro tunc are not designed to accomplish what a court might or should have done, or what it may have intended to do; the function of the nunc pro tunc device is limited in the Workers' Compensation Court to supplying inadvertent clerical omissions and correcting facial mistakes in recording judicial acts that were actually performed. (Footnote omitted.)

*Ferguson v. Ferguson Motor Co.,* 1988 OK 137, ¶¶ 6, 7, 9, 766 P.2d 335, 336–337.

¶ 8 In this particular, and rejecting the same void-for-lack-of-jurisdiction argument forwarded by Fund in the present case, the Supreme Court has held Fund bound to pay a final, unappealed order awarding benefits according to the order's terms even if arguably violative of statute. *Special Indem. Fund v. Cole,* 1992 OK 104, ¶ 17, 834 P.2d 959, 963. In the present case, the trial court clearly had the jurisdictional power to adjudicate Fund's liability and to direct Fund's payment of benefits on proof of the requisites therefor under 85 O.S. §§ 171 and 172, and the trial court's decision, even if erroneous under § 172, nevertheless bound the parties thereto "until ... set aside or corrected in a manner authorized by law." *Cole,* 1992 OK 104, ¶ 17, 834 P.2d at 963. Further, Fund undertook none of the sole and exclusive methods authorized by Oklahoma law to challenge the allegedly erroneous decision of the Workers' Compensation Court, i.e., by a timely and properly commenced appeal to a three-judge panel, a timely and properly commenced review proceeding in the Su-

preme Court, a proceeding before the Workers' Compensation trial court commenced within twenty days after the date a copy of the subject order was sent to the parties, or a proceeding in the district court based on extrinsic fraud. *Weber*, 1995 OK 43, ¶ 17, 895 P.2d at 298; *Ferguson*, 1988 OK 137, ¶ 7, 766 P.2d at 337. Because Fund did not timely and properly challenge the trial court's January order directing immediate commencement of benefits' payments in any of the authorized ways, Fund may not now challenge that order and is bound by its terms. We therefore conclude the trial court did not err in refusing to vacate or modify its earlier order, and reject Fund's first allegation of error.

¶ 9 In its second proposition, Fund asserts as it did below that the express provisions of 85 O.S. § 42(A) proscribe certification of judgments against the Fund. That section provides in pertinent part:

If payment of compensation or an installment payment of compensation due under the terms of an award, *except in the case of an appeal of an award or an award from the Special Indemnity Fund,* is not made within ten (10) days after the same is due by the employer or insurance carrier liable therefor, the Court may order a certified copy of the award to be filed in the office of the court clerk and the county clerk of any county, which award whether accumulative or lump sum shall be entered on the judgment docket of the district court, and shall have the same force and be subject to the same law as judgments of the district court. Any compensation awarded and all payments thereof directed to be made by order of the Court, *except in the case of an appeal of an award or an award of compensation from the Special Indemnity Fund,* shall bear interest at the rate of eighteen percent (18%) per year from the date ordered paid by the Court until the date of satisfaction. Compensation ordered to be paid from the Special Indemnity Fund shall bear interest at the rate of interest applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes from the date of the award. Any

award from the Special Indemnity Fund prior to the effective date of this act (footnote omitted) shall bear interest at the rate of interest applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes from the effective date of this act.....

(Emphasis added.)

¶ 10 In construing a statute or ordinance, the courts strive to ascertain the intent of the enacting body by consideration of the language employed, and courts will not read exceptions into a statute or ordinance not so intended. *See, e.g., Seventeen Hundred Peoria, Inc., v. City of Sapulpa,* 1966 OK 155, ¶ 14, 422 P.2d 840. Stated otherwise:

The governing principle in statutory construction is legislative intent. (Citations omitted.) This intent is ascertained from the whole act in light of its general purpose and objective. (Citation omitted.) If the language is plain and clearly expresses legislative will, such language will be followed without further inquiry. (Citation omitted.) However, if the statute is ambiguous or its meaning uncertain, it is to be given a reasonable and sensible construction, one that will avoid absurd consequences, if this can be done without violating legislative intent. (Citation omitted.)

*State ex rel. Dept. of Public Safety v. 1985 GMC Pickup, Serial No. 1GTBS14EOF2525894, OK Tag No. ZPE852,* 1995 OK 75, ¶ 7, 898 P.2d 1280, 1282. When required to ascertain legislative intent in statutes amended, we follow the rule:

Where a statute is amended, the Legislature may have intended either, (1) to effect a change in the existing law, or (2) to clarify that which was previously doubtful. (Citations omitted.) Which purpose was intended by a particular amendment is to be determined to some extent from the circumstances surrounding its enactment. (Citations omitted.) Where the former statute was clear, or where its meaning had been judicially determined, the amendment may reasonably indicate that the intention of the legislature was to alter the law. (Citation omitted.) On the other hand where the meaning of the former

statute was subject to serious doubt, or where controversies concerning its meaning had arisen, it may be presumed that the amendment was made to more clearly express the legislative intention previously indefinitely expressed.

*Magnolia Pipe Line Co. v. Oklahoma Tax Commission,* 196 Okla. 633, 636, 167 P.2d 884, 888 (1946).

¶ 11 So guided, we have reviewed the statutory provisions governing the Fund. Section 172(A) mandates payment by Fund for permanent partial disability (PPD) "in periodic installments," and § 172(B) specifically proscribes commutation of awards for PTD against Fund to lump sum. Indeed, § 172 has been construed to proscribe acceleration of *unaccrued* portions of awards for either PTD or PPD against Fund under 85 O.S. § 41 where Fund has failed to promptly pay. *Cole,* 1992 OK 104, ¶ 10, 834 P.2d at 961; *accord, Special Indem. Fund v. Trim,* 1992 OK CIV APP 163, ¶ 6, 843 P.2d 397, 398. However, the Supreme Court in *Cole* found no proscription against certification of judgments against Fund as to *accrued* portions of a PTD award, and the Court of Appeals in *Trim* found no proscription against certification of judgments against Fund for *accrued* portions of a PPD award. *Cole,* 1992 OK 104, ¶ 22, 834 P.2d at 963–964; *Trim,* 1992 OK CIV APP 163, ¶ 6, 843 P.2d at 398–399.

¶ 12 In this regard, because there existed some controversy over applicability of § 41 and § 42 to Fund, we presume the Legislature by the 1994 amendment to § 42 intended "to more clearly express the legislative intention previously indefinitely expressed." *Magnolia Pipe Line Co.,* 167 P.2d at 888. That is to say, we presume the Legislature intended, by the 1994 amendment to § 42(A) twice inserting the phrase, *except in the case of an appeal of an award or an award from the Special Indemnity Fund,* in the first instance to codify the accrued-versus-unaccrued dichotomy recognized in *Cole* and *Trim,* and in the second instance to grant Fund relief from the eighteen percent (18%) interest rate ordinarily imposed on other employers and insurers for delay in payment. *Special Indem. Fund v. Adams,* 1996 OK

CIV APP 34, ¶ 3, 918 P.2d 84, 85 ("The amendment [to § 42(A) ] ... reflects the legislature's understanding of the ... Fund's continuing problem with the timely payment of awards due to a lack of funds ... [and] lowers the Fund's [interest] liability somewhat while still compensating injured claimants for the non-use of their award monies.") We therefore hold § 42(A) as amended in 1994 imposes no impediment to certification of judgment for accrued, unpaid benefits by Fund, and conclude the trial court committed no error in the present case by certifying judgment under § 42(A) for the accrued and unpaid benefits owed Claimant by Fund.

¶ 13 The orders of the trial court refusing to vacate or modify its previous order and certifying judgment are therefore SUSTAINED.

JONES, V.C.J., and GARRETT, J., concur.

